```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA                :
                                        :        09 Cr. 1160 (DLC)
              -v-                       :
                                        :        OPINION & ORDER
                                        :
JOHN KIM,                               :
                    Defendant.          :
                                        :
----------------------------------------X
```

APPEARANCES:

For the Government:

Harris M. Fischman
Assistant United States Attorney
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007

For Defendant:

Michael Hurwitz
Hurwitz Stampur & Roth
299 Broadway, Suite 800
New York, NY 10007

DENISE COTE, District Judge:

     Defendant John Kim ("Kim") has moved pursuant to Fed. R.
Crim. P. 12(b)(3)(B) to dismiss the one-count Indictment filed
against him on December 8, 2009.  The Indictment charges Kim
with conspiracy to commit wire fraud in violation of 18 U.S.C.
§§ 1343 and 1349.  Kim contends that the Indictment is defective
and therefore insufficient to support the charge because it
fails to "provide sufficiently specific factual allegations"
concerning "any of the alleged acts that [Kim] may have

committed or how such acts may be criminal."  For the following reasons, the motion to dismiss is denied.

BACKGROUND

The following facts are taken from the Indictment.  At all times relevant to the Indictment, Kim and his wife, an alleged co-conspirator not named as a defendant ("CC-1"), owned together a residential property in Leonia, New Jersey (the "Property"). In or about May 2006, Kim and another co-conspirator ("CC-2") formulated a plot to sell the Property to another co-conspirator ("CC-3"), who would act as a straw purchaser and make the purchase using a false name ("Identity-1").[1]  The Indictment alleges that Kim and the above-mentioned parties then conspired to defraud a mortgage lender, Countrywide Home Loans, Inc. ("Countrywide"), to make loans to CC-3 (in the guise of Identity-1) in order to supply the funds necessary for purchasing the property.  To facilitate this fraud, Kim and his co-conspirators prepared and submitted mortgage loan applications containing false and misleading information.  The end goal of Kim and CC-2 was to "strip[] the equity out of the Property" through the fraudulent loans, to pay off existing mortgages, and to continue living at the Property.

The Indictment contains various specific allegations

---

[1] The Indictment alleges that CC-2 provided CC-3 with a New York Driver's License in the name of Identity-1.

concerning the closing of the sale of the Property and the path

of the funds involved.  At the May 26, 2006 closing on the

Property, Kim and CC-1 transferred the deed to the Property to

CC-3, using Identity-1, as part of CC-3's purchase of the

property for approximately $555,000.  At the time of the sale,

there were two mortgages on the Property with an outstanding

balance of approximately $408,000.  CC-3 signed a number of

documents at the closing under the name of Identity-1 and made a

number of false statements in the accompanying loan documents.

In particular, the Indictment alleges that CC-3 misrepresented

that he was currently employed, when he was not, and that he had

$67,000 in liquid assets, when in fact he had significantly less

than that amount.  The Indictment also alleges that CC-3 never

lived, and never intended to live, at the Property.

On or about the date of the closing, Countrywide funded two

mortgage loans in the name of Identity-1 totaling approximately

$555,000.[2]  Countrywide sent two wire transfers of approximately

$449,000 and $112,000 each to an attorney trust account (the

"Account") maintained at the Bank of New York in the name of the

attorney representing Identity-1.  On or about that same date,

various checks were then issued upon funds within the Account:

(1) a check to CC-1 for $123,935.99; (2) a check to Bank of

---

[2] The two loans were for approximately $444,000 and $111,000,
respectively.

America for $93,615.48, to pay off a previous mortgage on the

Property in the name of CC-1; and (3) a check to Countrywide in

the amount of $315,865.80, also to pay off a previous mortgage

on the Property in CC-1's name.[3]

About one week after the closing, CC-2 and CC-3 returned to

the Property to meet with Kim.  At that meeting, Kim gave CC-2 a

certain amount of cash, and CC-2 in turn gave CC-3 approximately

$3,500.  As of December 2, 2006, Kim was still living at the

Property.  The mortgage loans issued by Countrywide on or about

May 26, 2006, are currently in default.

## DISCUSSION

Kim moves to dismiss the Indictment for insufficiency under

Fed. R. Crim. P. 12(b)(3)(B) on the ground that it does not

detail any allegedly criminal acts by Kim.  The law on

determining the sufficiency of an indictment is well-settled.

Under the Federal Rules, the Indictment "must be a plain,

concise, and definite written statement of the essential facts

constituting the offense charged" and must include the "statute,

rule, regulation, or other provision of law that the defendant

is alleged to have violated."  Fed. R. Crim. P. 7(c)(1).  There

are also "two constitutional requirements for an indictment:

---

[3] Paragraph 5 of the Indictment states that the scheme involved
"pa[ying] off mortgages in CC-2's name."  Paragraphs 12 and 13,
however, imply that the existing mortgages were in CC-1's name.

'first, [that it] contains the elements of the offense charged
and fairly informs a defendant of the charge against which he
must defend, and, second, [that it] enables him to plead an
acquittal or conviction in bar of future prosecutions for the
same offense.'"  United States v. Resendiz-Ponce, 549 U.S. 102,
108 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117
(1974)); see also United States v. Yannotti, 541 F.3d 112, 127
(2d Cir. 2008).

       But, it is also well established that "an indictment need
do little more than to track the language of the statute charged
and state the time and place (in approximate terms) of the
alleged crime."  Yannotti, 541 F.3d at 127 (citation omitted);
see also United States v. De La Pava, 268 F.3d 157, 162 (2d Cir.
2001).  Thus, the Indictment need only allege "the 'core of
criminality' the government intend[s] to prove" at trial, and
consequently, the Indictment is "read . . . to include facts
which are necessarily implied by the specific allegations made."
United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007)
(citation omitted).  Where the charged crime "involves making
false statements, the 'core of criminality' is not the substance
of the false statements but rather that knowing falsehoods were
submitted."  Id. (citation omitted).

       On a pretrial motion to dismiss, it is not proper to weigh
the sufficiency of the evidence underlying the indictment,

unless the Government has already made "a full proffer of the evidence it intends to present at trial."  United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) (citation omitted). This is because indictments are "not meant to serve an evidentiary function," but rather, "to acquaint the defendant with the specific crime with which he is charged [and] allow him to prepare his defense."  United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007) (citation omitted).

The Indictment meets the requirements of the Federal Rules of Criminal Procedure and the U.S. Constitution.  The Indictment charges Kim with conspiracy to commit wire fraud.  Wire fraud is an offense defined by 18 U.S.C. § 1343,[4] and 18 U.S.C. § 1349 makes a conspiracy to commit wire fraud a crime.[5]  The Indictment

---

[4] Title 18, Section 1343 of the United States Code provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

[5] Title 18, Section 1349 of the United States Code provides:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense,

specifies the statutes that Kim is alleged to have violated,

states the elements of the crimes charged,[6] and identifies the

approximate time and place of the alleged acts.  Furthermore,

the Indictment includes several pages of factual detail

describing the nature of the fraudulent scheme in which Kim and

his co-conspirators are alleged to have participated, including

an identification of the property at issue, the means by which

the scheme unfolded, the identity of the target, and the

relevant dates and dollar amounts of the funds that were

obtained.  The Indictment further identifies at least three

overt acts taken in furtherance of the conspiracy.

Kim complains, however, that the Indictment does not

include any false statements directly attributable to Kim and

that it "fails to detail any of the alleged acts that [Kim] may

have committed or how such acts may be criminal."  As a matter

of substantive law, however, it is not necessary that each of

the conspirators personally utter a false statement, that an

"overt act" committed as part of the conspiracy be itself a

criminal act,[7] or that an overt act in furtherance of the

---

the commission of which was the object of the attempt
or conspiracy.

[6] Kim concedes that the Indictment "properly track[s] the
language of the statute."

[7] For this reason, Kim's assertion that "[t]he exchange of money
. . . without more, is not illegal" is immaterial.

conspiracy be committed by the defendant himself (as opposed to a co-conspirator).  The crime of conspiracy requires that the Government prove "that an overt act in furtherance of the conspiracy was committed," United States v. Huezo, 546 F.3d 174, 180 (2d Cir. 2008) (citation omitted), and that it was committed by "a single one of the conspirators."  United States v. LaSpina, 299 F.3d 165, 176 (2d Cir. 2002) (citation omitted). Whatever the scope of the pleading requirements under Rule 7(c), an Indictment certainly cannot be faulted for failing to make a showing of facts which are not even necessary to sustain a conviction.  This Indictment meets and exceeds the Government's obligations under Federal Rule of Criminal Procedure 7(c)(1) and the U.S. Constitution.

## CONCLUSION

The defendant's March 15, 2010 motion to dismiss the Indictment is denied.

SO ORDERED:

Dated:    New York, New York
         May 4, 2010

DENISE COTE
United States District Judge

8